Court 17-06-19 Mark Gons v. Eleanor's Workers' Compensation Commission Counsel, you may proceed. May it please the Court, Mr. Wirtz, my name is Bruce Rousseau and I represent Mark Gons. This is a five-year filing and I have to win on CWC. So I'm whittling this down to just one argument on this case today. Was the Commission wrong on CWP? And one question on that is, did the Commission tell us what the basis for their ruling was going to be and then did they stick to it? As to the Commission errors on CWP, there were seven, all related to the basis that I'm telling you about. And the first one is that the arbitrator found Meyer and Rosenberg more persuasive than Smith and Alexander. The problem with it is that that's not the factual question. There were three other doctors, too. Meyer and Rosenberg had to be more persuasive than Smith, Alexander, Kazbaz, Eastambouli, and Eastman. Well, can I stop you there? There's a well-settled doctrine of law that the number of experts on either side doesn't determine the outcome of the case. What I'd like you to comment on specifically is I think we saw something in this case that we don't always see. That is, the arbitrator specifically, which his reasoning and decision was adopted by the Commission, specifically articulated reasons why he believed the respondent's experts over the claimant's experts, including the fact that Dr. Falk, I believe, was not retained by either party. So can you tell us how they erred when they get to weigh the credibility and weight of the experts? Thank you. First, I'll say that my comment about the numbers of doctors didn't have to do with the numbers. It had to do with who they are, and this is all related to Dr. Falk. So, in other words, there were five doctors here, Smith and Alexander, Kazbaz, Eastambouli, and Eastman. They left those out. Now, the problem was, and I'm running past my notes here, so I'm going to get this messed up, but the problem was that Dr. Falk was a treating radiologist. In fact, he was a treating radiologist for Dr. Kazbaz. Dr. Kazbaz was the pulmonologist that Dr. Eastman sent Mr. Johns to. So if your basis is I'm going to believe Dr. Falk because he's not a party to this, he's not related to either party, well, neither are Kazbaz or Eastman. And, in fact, Dr. Falk is inextricably intertwined with them. Again, you ask the question and it gets me away from my notes, but Dr. Falk's report is written on Dr. Kazbaz's letterhead. And underneath the signature of Dr. Falk, and here's the formal report here, are the initials of Dr. Kazbaz that he read it. Dr. Kazbaz worked for the Black Lung Clinic. He did for several years work for the Black Lung Clinic in Carbondale. You don't see his name too much for me because he's federal. But the federal require that in the report is turned in a separate formal report of a radiologist. That's it. And he took the X-ray in Dr. Kazbaz's office. He read it there. He wrote the formal report for him, signed it on Dr. Kazbaz's letterhead. And, therefore, when it comes right down to it, my problem with this case, and I think it's reversible error, is the commission, the operator, could have picked a different basis. They could have picked any basis they wanted. But when they pick a basis, they need to stick with it. And if their basis is correct, if Dr. Falk has credibility because he's not related to either party, then you've got Kazbaz, Istanbuli, and Eastman with exactly the same criteria. Why not? Why not pay attention to them? Why does it make the rationale flawed? As you know, the commission weighs the competing medical evidence. They weigh the experts. Testimony. So how do we substitute our judgment for them, which we cannot do? I mean, to me, unless you can point out that there's some flaw in the underlying reasoning, there's a flaw in the foundational opinion that they give, I think it's a hard sell to say that one expert is more credible or believable than the other. And you seem to be articulating that, but I'm not getting past that. You're pointing out specific reasons why you believe the claimants' experts were more credible and superior in their opinions than the respondents. But that's a matter for the commission, isn't it, in the final analysis? After 30 years, I finally figured out that what you're saying is exactly what needs to be done. I'm still not articulating it very well. But my point in this is not the qualifications of Kazbaz, Eastman, and Istanbuli. It's not where they've been before. I'm not talking about them. I'm not talking about their opinions. I'm talking about the basis. They didn't have to give us a basis. But once they did, it became something they had to follow. So the only things I can say about Kazbaz, Istanbuli, and Eastman are what the arbitrator said about Fulk. And when you look at what the arbitrator said about Fulk, it's exactly like these guys. I have to develop claims. I need that consistency. Both parties need that consistency. So my entire argument is that the basis for the arbitrator decision, which she wrote very carefully, the basis was not followed. So if I understand you, we've got a situation here where there are an equal number of doctors from the claimant standpoint and from an employer standpoint. Is that correct? They're not equal numerically, but equal in terms of- So how many employer positions? Two. How many claimants? Five. Okay. So numerically, they're not equal. But then we've got Fulk, who arguably, her basis was, is not oriented towards one side or the other. That's correct. And I have nothing wrong with that basis. Okay. My comment is that we've got two paid experts and two paid experts, and then she breaks the tie with Fulk because he's not part of it. Three more that are not part of it, all of them finding CWP. And so she, the arbitrator, strayed from her basis, and that is my only, my single and only point. Arbitrator actually, you know, a lot of arbitrators don't give you their basis. I wish they all did. This time the arbitrator did, but didn't follow. Well, let's assume for the sake of the argument, even if you are correct that the arbitrator strayed from the basis, does that necessarily mandate that the conclusion of the arbitrator is adopted by the commission is against the manifest weight of the evidence? How does it necessarily establish that? Inside that question, I see two issues. One is a bare, take a look at this evidence, throw it on a table, what do you think? The second one is, after I've looked at the evidence, when I tell you why I'm going to think what I think, I need to do what I said. And what I'm asking here is for the court to send it back to the commission to do right. Which way they do right will be up to them. Let me ask you a question. TESBAS wasn't a court-certified radiologist, was it? Fulk was. So Fulk read the x-rays at the request of TESBAS. Yes. And TESBAS testified that he would defer to the certified radiologist interpretation of the films. So why should the commission have relied on TESBAS when they relied upon the radiologist he sent the films to? Well, for several reasons. One is that TESBAS did rely on Fulk. Now, if you see what Fulk wrote in his report, he said there was granulomatous disease. Not only did he not say there was CWP, he didn't say there wasn't. And this is why he was examining. And this is the way it's done in federal. The one that would take what he said he saw on the x-ray and put it to a disease is Dr. TESBAS, who has the patient history, knows what the exposures were. Because a granuloma is a gathering of macrophages. They can be around something that gets stuck in your lung, like you aspirate or you inhale coal dust, or it can be histoplasmosis, a fungus. But in either case, it's a gathering of macrophages, and Dr. Meyer testified to that. Now, that gathering of macrophages shows up on the x-ray as a white spot. A white spot is a white spot. There are only two ways you can figure out what the white spot is from. One is to have somebody who knows all the history who says, well, they were around this, and that's all, so I'm going to say it was this, or a pathologist. Get in there and take the thing apart and see what's in the middle of it. So what Dr. Fulk did, and it's in his report, he said, here's what I saw. I saw granulomatous disease. Now, if you look at Dr. Istanbuli's testimony, he's the second pulmonologist for the claim and he said, CWP is a granulomatous disease, and that's correct. What it is is all these coal dust trappings in your lungs become surrounded by macrophages. That's the central part of each single macula of co-worker's pneumoconiosis. And here it's important to say, now why, Bruce, why are you saying that Dr. Tazbaz and Dr. Istanbuli can figure out what Fulk meant when the guys for the respondent can't? And the answer is Dr. Fulk works in Tazbaz's office. He reads them for him all the time. He writes his answer on the letterhead. They talk the same kind of words, not just granulomatous, but other words too. Dr. Istanbuli is only 15 miles from that office. They see the same people. And Dr. Eastman is a primary care physician just on the other side of Carbondale from Dr. Fulk and Dr. Tazbaz. So what I'm saying is you've got all these guys together. They speak the same language. When Dr. Fulk says, I know what a, I see granulomatous disease, they know what he's talking about in a coal miner with this much underground experience. So this is why when you look to see what needs to be done, I think the commission needs to get a look at this. They may come out against me again. I don't care. But they have to be consistent. When the basis is stated, they need to stay with the basis. So what would be the basis for remanding? Because you're saying that there was no basis articulated. You have to be consistent. And what would this remand order, if you had your way, even say? I'm saying that there was a basis stated and that it should go back to the commission to review the evidence and make a determination if that was the proper basis or how to stay with the basis, the wording of that. I'm not sure. I always follow your lead on that, obviously. But it needs to go back and be done right. That's not too much to ask for these miners. They only get one chance. Now, under federal, it would be different. We're standing here. I lose. Okay, Mr. Johns, if in five years you get more evidence that says you got CWP, COPD, emphysema for mining, somebody will file again. But here, there's only one shot. And it's the nature of what we do in Illinois occupational disease that says get it right. And what's disturbing here is they got it really wrong. They could not have got it more wrong. Well, let's summarize quickly that you're saying that the basis of the arbitrator, the decision in total, was adopted by the commission. Yes. They didn't do anything independent of the arbitrator's decision, reasoning, findings. And if you had to summarize very simply, in a sense, what was the basis that arbitrator, was it Berry or? Deary. Deary used. That the most credible witness is the one who's not hired by either party. The most credible witness is the one who's not a part of the litigation. If that's true, you have three. It shouldn't even mention the three. And none of those work. Not only are they independent, but Dr. Fulk is part of the chain. He's the radiologist for them. So the simplest statement would be, number one, they stated the basis. It was an understandable basis, a basis with guardrails. And that is the most credible witness is the one who doesn't have a dog in the fight. Can't you interpret what this arbitrator did? All that you're talking about is the paragraph in the arbitrator's decision that referred to CWP, not the paragraph in the arbitrator's decision that referred to COPD. The paragraph and the reasons she gave for ruling against him on the COPD is found on page 10 of the decision, not 9, where she rules on CWP. She says, finds that he failed to prove preponderance of the evidence that he had COPD, asthma, hypertension, chronic arthritis, et cetera, and so on. In so concluding, the arbitrator finds probative petitioner's testimony that his symptomatology improved following the separation for the coma at 27, which undermines the suggestion of a causal relationship between his current condition and his employment instead demonstrates that his significant history of smoking and or comorbid factors are solely causative of present complaints. As Dr. Rosenberg explains, smoking is due. So everything that you're talking about appears only in the paragraph where she finds in favor of the respondent on the CWP issue. That's because, and I appreciate, there were good questions coming out here. It kept me from getting to my notes in which I was going to say I yield on everything else. I want to win on CWP and CWP only. It's a five-year filing. There are other cases that I might come to you knowing I got CWP in the bag and say, and by the way, emphysema comes in or COPD comes in because they're a part of it. I'm not talking about that. Not on this case. This is the wrong case. So anything other than CWP, I yield. And there was another couple questions you asked in there, and I'm losing them now. But anything to do with COPD, forget it. CWP is a separate disease. It's the only one we want. There were guardrails on the basis, and they were violated. Okay. You'll have time in reply. Your time is up right now. Thank you. Counsel, you may respond. Please, the court. Mr. Wessor, my name is Ken Wertz, and I represent Diapolee. This case comes to the court after a denial by arbitrator hearing, as we discussed. The commission then, Commissioner Dwight Brennan and Terrell affirmed, and Judge Schmidt here in Sangamon County, I believe, affirmed. And then this case comes to you from appeal from that decision. The issue that's presented is one of manifest weight. It is the position of Diapolee that there was sufficient evidence in the record to support the commission's finding. In regard to the chest imaging in this case, there were seven positive interpretations of chest X-rays for black lung. Five of those were by D-readers. There were seven negative interpretations of chest X-rays for black lung. All seven were negative. And just picking up on some of the questions that were posed. In regard to Dr. Tazbaz, he testified, as Judge Hoffman pointed out, that he would defer to a board-certified radiologist for a formal opinion as to what the chest X-ray revealed. It was given to him by Dr. Tazbaz for interpretation. I was quickly looking to see if I had that radiology report, and I don't have it with me. But I suspect if you look in the indication for saying that there's some mention there of this gentleman being worked up for black lung, he finds the presence of granulotomous disease. He does not find the presence of pneumoconiosis. Dr. Istanbuli testified that he is not able to distinguish granulotomous due to causes other than coal dust exposure from the presence of co-workers' pneumoconiosis. And I'm just going to read what my summary says. So this is paraphrasing what's in his testimony. I'm not able to distinguish nodules on chest X-ray as being due to coal dust versus granulotoma unrelated to coal dust, not by looking at the chest X-ray alone. So he does not have the ability to make that distinction. That is a distinction that is taught in the reader's board, because that is an issue that comes up. In regard to Dr. Oseman, he testified that he did not know what the diagnosis of coal workers' pneumoconiosis was based on. And if I recall correctly, he did not have any chest X-ray evidence in his treatment records of this gentleman at all. And so you have to question his ability to diagnose the disease. He also had no pulmonary function testing and, in fact, saw no need to do that until, I believe, it was 2013 when this gentleman came to him and asked to be referred to a pulmonologist. Prior to that time... What does pulmonary testing go to? Which disease? Well, that would go to the issue of disablement, I think. You cannot really, you should not make a determination as to the presence of, I think, any occupational disease based upon spirometry, diffusion capacity, blood gases. Those tell you the ability of the lung to function. They may give you a clue as to cause, but the screening tool for black lung... That's all we're focused on. CRPD is a lot of that other testing, but we're only here on CW. That's right. So that would be irrelevant. That's irrelevant other than, I think, it speaks to whether he thought there was a need to work this gentleman up for black lung, which, as you know, he signed a, or he answered questions on a letter that Mr. Messore had given to him where he said, I believe, that he thought he had black lung. Well, as it turns out, he doesn't know what the diagnosis is based on. Mr. Orris, let me ask you this. Mr. Messore seems to be focusing in on the observation of the arbitrator that Dr. Falk was not directly retained by either party, thereby enhancing his credibility. Whether we debate the merits of that observation, he seems to be saying, well, wait a minute, they didn't apply that rationale equally to the other people in the case, therefore the whole thing is flawed. So what's your response to that? Well, I think her reasoning is sound. In what regard? Well, he was independent, and more than that, as I say, if you go back and look, and I could be entirely wrong about this, and you look at that radiology reporting issue, there will be an indication of why that film was actually being taken. And he very clearly, I remember, said that there was granulotomous disease, not pneumoconiosis. He had no dog in the fight. But in the mere fact that he was not retained by either side wasn't the only reason the arbitrator found him credible, correct? That's correct. I believe that their findings of fact were sound. They had to judge what evidence to give greater weight to. They did their job in that regard. And I think without question there's sufficient evidence in the record to support the denial. I have nothing more. I don't believe we do either. Thank you, Counsel. Counsel, you may reply. It has to go with what the arbitrator said, and she said she believed Dr. Folk over either party's experts. That was the linchpin of the entire case. Number two, here's the radiographic report. It says symptoms, indications, sharpness of breath. It was taken, and I think there's one important thing, though, about the CWP and Dr. Folk. He was taken for federal report for black law. He knew that. But he didn't put down CWP one way or the other. Now, as to what Mr. Wertz said, seven positive readings out of 5B readers for claimant, seven negative. The problem is, Dr. Meyer, their star witness, says a negative X-ray can never rule out CWP, can never rule it out. So beyond my main point, which I want to say is still my main point, beyond my main point, if you pile up the evidence, which is all we can do out here, we've got five people for claimant saying got CWP, got two for respondent saying can't say he doesn't. How that becomes a preponderance of evidence, that he doesn't have CWP, I don't know. And the thing that makes it so important is it's brought up by respondent's witness. He's the one who says it. Now, you have to be careful with these words. It's our job to trick you sometimes. And you have to be careful with what Mr. Wertz was saying. He said E. Stambouli couldn't tell granny Lomas from CWP. Well, that's because he's a truthful witness. When you ask that question that way, he's going to answer it. There are white spots on the x-ray. That's all you can tell. But then he goes further and says you have to look at the whole package. If you'll take that quote that Mr. Wertz said and then just continue reading in the deposition, he said you have to look at the patient history, the PFTs, the physical exam, the entire package, and then make a determination. Still, it's consistent with. It doesn't say it is. It's consistent with. Now, Mr. Wertz said that Dr. Eastman didn't know what CWP is and he didn't have any PFTs and he didn't have any chest x-rays. Well, absolutely untrue. He's the doctor that sent this man to the expert on black lung, Dr. Tasbass. He sent him there. And in his records is the report of Dr. Tasbass saying CWP and PFTs and the report of Dr. Folk and Dr. Tasbass' interpretation of that, which says CWP. So Dr. Eastman went exactly by the protocol you'd want a primary care physician to do. Got a special problem, sent him to a specialist, which he did. He had that in his records. So you can't say that Dr. Eastman didn't know what he was talking about. You can't say that Dr. Istanbuli was less than knowledgeable about what was going on. All you can say is that, and I'm going to come back to this because it is my only point, and I think it's important, and as I get older, hopefully I'll bring this to you in a better way. When I look at the file, I pick up that file. What I do is I look, and by the way, there was a dissent in this at the commission. When I look at that file, my only question is this. Not did they disagree with what I want, but did they have a basis for their opinion and did they slice it? That's the only way I can come to you with it. And this is about as good a case for that as you're going to see. Thank you. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement at this position of trial issue.